IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,  :<br>:<br>Plaintiff,  :<br>v.  :<br>:<br>JONATHAN W. MIKULA,  :<br>JOHN B. CRADDOCK,  :<br>JW&P CONSULTING, LLC, and  :<br>NATIONS WARRANTY GROUP, INC.,  :<br>:<br>Defendants.  :<br>: | Civil Action No.<br>1:08-cv-3097-BBM CAP |

## FINAL JUDGMENT AS TO DEFENDANT JONATHAN W. MIKULA

This matter is pending before the Court for a determination of the amount of civil penalties to be awarded against Defendant Jonathan W. Mikula ("Mikula" or "Defendant"). On September 24, 2009, this Court entered an Order [Doc. 95] against Mikula permanently enjoining him from violations of the statutes and rules charged in the Complaint, and setting the amount of disgorgement of ill-gotten gains against Mikula at $160,906 and the amount of prejudgment interest thereon at $4,511.33, and providing that the Court shall determine the amount of a civil

penalty, if any, that Mikula shall pay, pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], upon motion of the Commission. The Order of September 24, 2009 provided that, for purposes of the motion before this Court, the allegations of the Complaint are to be accepted as and deemed true.

Accordingly, for the purposes of the instant motion, the Court accepts the following allegations of the Complaint as true:

1. Mikula was the sole owner and operator of JW&P Consulting, LLC. Mikula is a recidivist securities law violator, having consented in August 2007 to a permanent injunction against future violations of the registration and antifraud provisions of the federal securities laws related to an internet-based Ponzi scheme that he operated. See SEC v. Phoenixsurf.com, et al., Civil Action No. CV 07-4765 JSL (PLAX) (C.D. Cal.), Lit. Rel. No. 20205 (July 24, 2007).

2. JW&P Consulting, LLC ("JW&P Consulting") is a Georgia limited liability company based in Marietta, Georgia. Mikula formed JW&P Consulting in July 2007 and was its sole owner. Through JW&P Consulting, Mikula offered and sold promissory note programs for Nations Warranty Group, Inc. ("Nations Warranty") and three other Atlanta area businesses.

3. John B. Craddock ("Craddock") was the Chief Executive Officer and owner of 49% of the stock of Nations Warranty.

4. Nations Warranty, incorporated in Georgia in December 2004 and based in Marietta, Georgia, was an extended automobile warranty broker. Nations Warranty used direct mail to solicit customers and sell extended car warranties to callers who respond to the direct mail solicitations. Nations Warranty had approximately 20 employees.

5. Nations Warranty brokered automobile warranties via direct mail marketing since approximately 2004. Nations Warranty purchased mailing lists and used those lists to distribute large volumes of auto warranty solicitations via U.S. mail. In or around July 2007, Mikula purchased a 10% interest in Nations Warranty from Craddock for $25,000.

6. In or around July 2007, around the same time he consented to a civil injunction in the Phoenixsurf.com matter, Mikula organized JW&P Consulting.

7. Through JW&P Consulting, Mikula immediately began consulting with Craddock on additional capital-raising methods intended to grow Nations Warranty's business. Mikula devised and introduced Craddock to the promissory note program that they ultimately instituted at Nations Warranty.

8. The Defendants began selling Nations Warranty promissory notes in approximately January 2008. The Defendants offered two types of notes. The "Standard Note" promised to pay investors interest of 4% every 30 days for a term of 100 days. The "Premier Note" promised to pay investors interest of 5% every 30 days for a term of 220 days. Investor principal was to be repaid with the final interest payment.

9. Investors could purchase notes with a face value of between $1,000 and $250,000 each calendar quarter. The program allowed rollovers of both principal and interest.

10. Nations Warranty told investors it would sell a maximum of $1.5 million in notes each calendar quarter.

11. Mikula directed the marketing, sales, processing and servicing of the notes through JW&P Consulting in exchange for a commission of 10% to 15% of the face value of all notes he sold. Mikula also recruited a network of approximately 25 "account managers" and "district managers" who referred investors to him in exchange for a 20% to 60% share of Mikula's commission. By virtue of the foregoing activity, JW&P and Mikula were acting as securities brokers without being registered with the Commission.

12. Shortly after the program began, Craddock authorized and Mikula directed the creation of a 17-page PowerPoint presentation (the "PowerPoint Presentation") that the Defendants used to market the notes. The PowerPoint Presentation, along with other marketing materials, was available on the websites of Nations Warranty and JW&P Consulting.

13. When an investor decided to purchase a Nations Warranty note, the investor would send funds by wire or check to Mikula or Craddock. The checks were deposited in Nations Warranty's only bank account and thereby commingled with revenues from Nations Warranty's business operations.

14. In return for their investment, investors received a three-page, nine-paragraph promissory note issued by Nations Warranty and signed by Craddock. Interest was paid to investors every 30 days by Nations Warranty via a check signed by Craddock.

15. At the end of a note's term, the note would be rolled over or investor principal would be paid via a check signed by Craddock.

16. Between approximately January 1, 2008 and October 2, 2008, Defendants fraudulently offered and sold at least 270 unregistered Nations Warranty promissory notes totaling over $2.8 million to approximately 120 investors.

17. Defendants, in their PowerPoint Presentation used to sell the investments and on their website, describe Nations Warranty as a profitable company. The PowerPoint Presentation stated at least three times that the investors' principal and return was "guaranteed."

18. In fact, there was no guaranty of Nations Warranty ability to repay the notes. Further, Craddock and Mikula were aware throughout 2008 that Nations Warranty was not profitable and that Nations Warranty, in fact, suffered a net loss of at least $1.2 million from January through October 2, 2008. Despite that knowledge, Defendants continued to use the sales materials until at least August 2008. Defendants failed to disclose that Nations Warranty's liabilities from the notes exceeded its assets by approximately $1 million as of August 31, 2008.

19. Mikula and Craddock falsely stated on Nations Warranty's website that Nations Warranty had the ability to raise capital through commercial bank loans, but preferred to raise capital through the promissory note program so that it could "network and build relationships" with individual note investors in the hope of their becoming Nations Warranty customers. In truth, Nations Warranty had applied for bank loans but had been turned down.

20. Defendants represented on Nations Warranty's website that JW&P Consulting had evaluated the risks of the Nations Warranty investment and found

them acceptable. Defendants did not disclose that JW&P Consulting was controlled and operated by Mikula, who had recently been enjoined as the result of a Commission civil action alleging that he operated a Ponzi scheme. Mikula had advised Craddock about the injunction against him. Nor did Defendants disclose that Mikula, who controls JW&P Consulting, was a 10% owner of Nations Warranty.

21. Defendants' sales materials misleadingly created the impression that the rate of return on the notes was much higher than it actually was. In the PowerPoint Presentation, Mikula and Craddock claimed that the Nations Warranty notes paid a return of 112% for the 100 day note, and 135% for the 220 day note. In the same document, they further misrepresented the rates of return by claiming that Nations Warranty offered an annualized rate of return of either 148% or 160% and misleadingly comparing the return on the notes to the ten-year average "top Stock Market return" of 10.51% and the "highest paying Money Market Account" return of 5.2% per year. These statements grossly overstated the actual rate of returns of 12% and 35% on the Nations Warranty notes. Assuming that the purported returns on the Nations Warranty notes included the return of principal, the statements were materially misleading in that the rates of return on equity and money market investments offered for comparison did not include the return of principal.

Based on the foregoing findings of fact, the Court hereby imposes the following relief:

I.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the injunctive and monetary relief imposed against Defendant Mikula by the Court in its Order of September 24, 2009 is incorporated into this Final Judgment. Because the Receiver has recently relocated his offices, any payments under Paragraph V of the Order of September 24, 2009 shall be sent to the Receiver not at the address specified therein, but, instead, at the following address: Pat Huddleston, II, The Huddleston Law Firm, 1300 Ridenour Boulevard, Suite 200, Kennesaw, GA 30152.

II.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that, in addition to the $160,906 in disgorgement and $4,511.33 in prejudgment interest imposed against Defendant Mikula by the Court in its Order of September 24, 2009, Defendant Mikula is liable for a civil penalty in the amount of $160,906.00 (CAP) pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. The Commission may enforce the Court's imposition of this civil penalty by moving for civil contempt (and/or through other collection procedures authorized by law) at any time after ten

(10) days following entry of this Final Judgment. In response to any such civil contempt motion by the Commission, the defendant may assert any legally permissible defense. Payments under this paragraph shall be made to Pat Huddleston, II, Receiver, c/o The Huddleston Law Firm, 1300 Ridenour Boulevard, Suite 200, Kennesaw, Georgia 30152, together with a cover letter identifying Jonathan W. Mikula as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment. Defendant shall simultaneously transmit photocopies of such payment and letter to Robert K. Gordon, Senior Trial Counsel, Securities and Exchange Commission, 3745 Lenox Road NE, Suite 500, Atlanta, Georgia 30326. Defendant relinquishes all legal and equitable right, title, and interest in such payment, and no part of the funds shall be returned to Defendant. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

IV.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

V.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: __May 11, 2010__, ~~2009~~

/s/Charles A. Pannell, Jr.
~~BEVERLY B. MARTIN~~ CHARLES A. PANNELL, JR.
United States District Judge